Good morning, Your Honor. Michael Brady appearing on behalf of Appellant Guideone Insurance Company. If you could just delay one moment while he sets up and then we can start. Sure, sure. It's not a problem. Okay, you ready? Okay. Here we go again. If you want to reset the clock, Ms. Ellis. Okay. Take it from the top. I'd like to reserve five minutes if this is all right with the Court. Okay. Please try to keep track and we'll try to help you. Very well. Your analysis has been made much easier, a case that potentially has a fairly complex structure. But your analysis has been made infinitely easier because of a decision handed down by the Oregon Supreme Court construing exactly the statutory scheme involved in this case, admitted by the other side, page three of their brief. That's the Perkins case, which is briefed. And in one sentence, the Perkins case says, the only analysis in a case like this is to look and see if the underinsured motorist limits and the liability limits are the same. All right. You just said in a case like this. This is a single. In this case, the Perkins case is even more applicable. And I'll explain that. Perkins is a single claimant case. Perkins was actually a two-vehicle accident. One person was injured. Yes, that's right. One person making claims. That's correct. All right. Are there any cases, since we're talking about similar cases, are there any cases where there's a one-vehicle accident and any court has held that uninsured motorist endorsement was triggered? I was just confused by that starting point. Oh, in the single, just to give you an illustration. For example, if you took our case and sort of pigeonholed it into the Perkins case, let's say I'm driving the van and I have five people in the van. I have my Guide 1 policy, which has a million dollars liability limits and a million dollars underinsured UIM limits. And let's assume that I am hit by a driver who is negligent and who is insured by Allstate with a $500,000 policy. Now, under those circumstances, $500,000 of my Guide 1 policy would be available to compensate the passengers in my car who are injured because my underinsured motorist limits are a million. The Allstate policy is only $500,000, so you compare the difference. Now, if you look at the Perkins, if you look at our case, you have a single car accident. The only insurance policy involved is Guide 1. Oregon, this is critical, Oregon requires that in every situation where an insurance company has issued a policy to me, the UIM limits and the liability limits must be exactly the same. Must be exactly the same. Therefore, our case is even stronger than Perkins because it means that in a single vehicle accident, you can never have UIM coverage available if the insurer makes available or tenders the full liability limits. That is critical to this case. Let me ask you just one question. That doesn't quite answer my first question, which I'll get back to. But my second question is the policy in this case that was issued to the church, the Ashland Christian Fellowship, does that have a total coverage of a million dollars? Or with the addition of the UIM endorsement, is it a $2 million policy now? It has liability limits of a million and UIM separate limits of a million. Okay. So it's a total of $2 million is available under that policy. No. Only $1 million would be available under any circumstances if the insurance company makes payment of the $1 million under the liability coverage. That's the holding of Perkins. You only compare the limits. That's the end of the analysis. If the limits are the same, the Perkins court says it is not even as a threshold matter an underinsured motorist case. You don't even reach the other issues that we have in this case. It is not as a threshold matter an underinsured motorist case if the limits are the same. So getting back to my first question just for one moment, are you aware of any Oregon case or even a case in other states in which a court has held that a single vehicle accident triggered the uninsured motorist endorsement? In other words, you have an insured vehicle, it runs into a tree or whatever happens. Runs into a tree. And I'm just puzzled as to how uninsured motorist endorsement is even applicable. So has there been any case so holding is what I'm asking. I don't think we've cited any case. And so in direct answer to your question, it's no. But I can tell you that if the van runs into a tree and there are five people in the van and I'm negligent in my driving of the van, then those five people make claims against me and my insurer will extend the one million in liability limits to those five people. But under Perkins, they would get no underinsured motorist coverage because once the liability limits are paid, there is no underinsured motorist coverage available, especially in Oregon where the limits must always be exactly the same. Oregon is different. California doesn't require the limits to be the same, for example. But Oregon has for years required the limits to be the same. Now, in this case, those people in the car were deemed to be insured under the policy. Is that correct? That's correct. The way UIM coverage works, claimants are denominated as first-party insureds. Claimants are first-party insureds. They're making the claim. Normally we think of insureds as a person against whom the claim is made. But in underinsured motorist and UIM cases, the claimants are treated as insureds. What about the Takano case and the Perkins Intermediate Court decision? I mean, Perkins Intermediate, I'm not sure what it's called here, the Intermediate Court of Appeals in Oregon, when they first took up Perkins, said this case is different than Takano and the multi-claimant situation. Now, the Supreme Court then took it up and never said that. So what do we make of all of that and what do we make of Takano? Well, what the Supreme Court in Perkins said, and they did address one of the issues that you have touched on, Your Honor, the claim in these cases is that the injured party was not fully compensated. And if the injured party is not fully compensated for their injuries, then UIM coverage should be available. I understand that's what Perkins said. I want to get past Perkins, though, and tell me why you just in your reply sort of say Takano and the Intermediate Court's decision in Perkins have been superseded. But you don't tell me why that's the case. Well, I'm telling you that in Takano, the Court said what we're going to do is compare the liability limits to the, quote, amount payable, unquote, under the UIM coverage. And amount payable means the amount that the injured party would be able to obtain from the tortfeasor. Perkins says no. It says amount payable, according to the legislative scheme, means the underinsured motorist limits, not the amount that the tort, I'm sorry, not the amount that the claimant would be entitled to recover from the tortfeasor and not the amount the tortfeasor would be required to pay if the lawsuit were brought against the tortfeasor. But as I understand it, Takano examined more provisions in the insurance code that dealt with multi-claimant situations, whereas Perkins didn't do that. So factually, well, in the multi-claimant situation, you're going to have exactly the same scenario as the uncompensated plan. When you have multiple claimants trying to obtain part of this $1 million, then some of these people are going to be not fully compensated. So the multiple claimant situation involves almost always exactly what Perkins addressed, people who are uncompensated fully for their injuries. And Perkins says this makes no difference. This makes no difference. So we would submit that the analysis now of construing exactly the same statutory scheme that is involved in this case simply requires limits versus limits comparison. That's what Perkins says. And as a threshold matter, you will not have an underinsured motorist case if the limits are the same. And that's the end of the matter. And you wouldn't have to go to the other issues which were briefed in the trial court. See, Perkins was decided after the appeal was filed, and therefore we say changes the result below and requires summary reversal. We also argue that our policy provides the same end result that is required by the Oregon statutory scheme, because the Oregon statutory scheme envisions that since the limits are the same and if all the liability limits are paid, then no UIM benefits will be owed. The other side attacks the approach we used to accomplish the statutory scheme. They say, well, you can't have a provision in your policy reducing the limits of the UIM in accordance with whatever has been paid under the liability portion. For example, in our policy we say for every dollar paid under the liability limits, that amount is subtracted from the available UIM limits, meaning that if a million dollars is paid under the liability limits, true here, then zero amount would be owing under the UIM limits. And, of course, that's the end result of the Oregon statutory scheme. Lastly, we have cited to the court texts, elating texts, from throughout the United States on insurance law. And these texts indicate that the reason, the policy reason for these rules that I've been talking about and for the Perkins is that you don't want to have double recovery or stacking. And Oregon is an anti-stacking state. You don't get both UIM coverage and liability coverage when the limits are the same and when all liability limits have been paid. Oregon law allowed Guide 1 to put into its policy a simple statement that an insured vehicle does not, is not covered by its own under insurance coverage, right? I'm not sure I'm wording that correctly. But there's a provision that you could have put in the policy to make it very clear the under insurance would not apply in this situation. That was not done. Correct. And so your argument is just let's look at result versus result. My argument is that under Vega and Erickson, these decisions from Oregon say that the insurance company has a certain amount of freedom in the approach that it uses to accomplish the statutory result. And we say in light of those decisions, we didn't have to have an exclusionary provision in the policy, which is mentioned in the statute. We accomplished the same result with the so-called reduction of limits provision. And the same statutory result is obtained. And that freedom, you don't have to parrot the language of the statute according to Vega and Erickson. You're allowed certain freedom. What law says that we look at the ultimate result as opposed to the coverage that's made available? I thought Vega focuses on coverage, not the ultimate result. I think that's what Perkins says. You look at the ultimate result. If the policy limits are the same and the company has paid all the liability limits, that's it. That is the end of the analysis under Perkins. Can I ask, just looking at the policy and in the uninsured motorist endorsement, it does not, as Judge Seabright indicated, state that an insured vehicle is not an uninsured vehicle as the Oregon statute. Now, was there an intent otherwise that an insured vehicle could be an uninsured vehicle? You don't make the argument that the understanding of the parties was that if you have that uninsured motorist coverage would only arise when you're hit by an uninsured motorist as opposed to if you're in a single car accident. Why is that? Why don't you make that argument? Is there something about Oregon law that prevents you from making that argument? The argument that was made in the trial court is that no underinsured motorist benefits were available because the limits were the same and all the liability limits had been paid and the wording of the policy was consistent with the ultimate result under Oregon statute, namely that no UIM benefits would be owed if all the liability benefits had been paid. Say if only half of the insured liability had been paid, would there be uninsured motorist coverage available in this situation, a one-car accident? Yes, there would. In other words, if those five claimants sued me and the liability coverage for some reason only paid 500 and there was a million dollars in UIM benefits, that would be very unusual. I can't imagine a business situation in which that would happen, but hypothetically that would be true because less had been paid under the liability than under the UIM, but this was not true in the present case. We also cited to the court electronically 10 days ago a recent California case, the Explorer case, which reaches the same result. On the attorney fee question, there would be no attorney fees owed, of course, if you decide to summarily reverse, but we would just like to reiterate that the claim for attorney fees here was made under a statute. There was no claim in the trial court that they were making a claim under the common fund theory and they're precluded from doing that because the common fund theory, the attorney fees have to come out of the common fund and that would be impossible in this case because there's a settlement agreement provided to the contrary explaining what the claimants get. Thank you very much, Your Honor. Now, you failed and I failed to stop you with five minutes left. That's okay. But we'll give you a little chance to respond. Thank you very much. Dennis Black for the Smiths. In all candor, I doubt I can get everything I need to say into 15 minutes, let alone reserve any time. Well, pretend you're a New Yorker. Talk fast. I am a New Yorker. Well, hey, let's go. But I never picked that up from New York. Okay. To answer your question, Judge, I'm not aware of any Oregon case where the single vehicle insurance policy provided both liability coverage and UIM coverage. Which is why I was so puzzled by this. Well, I don't know if it's counterintuitive. But the statute, the UIM statute in Oregon prevents it if the insurance company inserts. Well, it doesn't say you have to insert. I mean, you know, when I look at the model's coverage and I compare it to the policy, and the model coverage just by definition says if you're insured, which all of these people were in the car under the policy, and I don't think that's disputed, if you're insured, then you can't get an insured motorist coverage. So it seems to me almost irrelevant what the policy says in the specific language, because that's, you know, you can't, the Oregon statute already says you can't get an insured motorist coverage. So they're equally, they're equal. They provide equal coverage. Why is that wrong? I mean, it just seems pretty intuitive to me. Well, because this isn't an intuitive situation. It's a contract situation and a statutory situation. And if the contract had included the permitted statutory provision that an insured vehicle is not an uninsured vehicle. The statute says you don't have to have everything in it. I mean, the statute itself says, you know, this is just the moral policy. It's not, you don't have to have this language in it. Right. It does say that, Your Honor. But what it does say is the, it says that these policy provisions are the only unfavorable policy provisions which can be included. And you can also leave them out. That's what all the Oregon cases from Vega to Erickson to every other case has said that interprets ORS 742.504. And coverage has been found in Vega, in Erickson, to just name the two leading cases, which could have been excluded and not provided if the insurance company had put in the provisions, the permitted provisions. They didn't. They tried to put in other provisions. The Oregon court says in Vega the legislature intended to provide insurers with some measure of freedom within that subject matter, within the subject matter of ORS 742.504.1 to 12. The state legislature says the insurers simply aren't covered by uninsured motorist coverage. That's what your state legislature says in the statute. And that's the result of the policy. So why, you know, I'm struggling to understand why that's unfavorable or less favorable than what the Oregon statute provides. Because it's not a results analysis. If you read Vega, the 504.1 through 12 are the only provisions that disfavor insurers that an insurer may include in a policy for UN UIM coverage. If they choose not to include some of those provisions, here the provision that says an uninsured vehicle is not an insured vehicle, which isn't in the policy, then coverage is provided. That's what Vega says. That's what Erickson says. Let me go at it this way. The other side argued or stated to us as a fact that Oregon law requires that the liability insurance amount and the underinsured or uninsured motorist insurance amount must be the same. It says if the policy complies with Oregon law, those numbers are always going to be the same, a million, a million, a half a million, whatever it is. Well, that's correct, Your Honor, except that you can waive it in writing. But that didn't occur here. Okay. But if the result of having those things be the same is as they contend, that is to say, well, if they're the same, once you've paid off the liability, there's nothing left to do, well, what function does that provision of Oregon law serve that allows the insurance company to write in the fact, well, uninsured is a separate deal? I mean, I don't know. It seems to me that the possibility of putting in the sentence that was not put into this policy is totally unnecessary, given their argument. Well, their argument is wrong, though, Your Honor. Perkins does only apply to the single claimant situation. And as the Court of Appeals said below, and as Takano said in a separate decision, the statutory scheme that existed at this time provided for a different analysis in the multiple claimant situation. And the policy itself, and this is a contract action, defines this situation as an underinsured motorist situation in the multiple claimant situation. The multiple claimant cases are when there's another car, right? There's an uninsured motorist. Not necessarily. Is there a case where it's just a single vehicle? There is not a case where there's a single vehicle, but the analysis is absolutely, well, it's not a problem, Your Honor, if you follow the Oregon conceptual scheme. Which expressly excludes insurers from getting uninsured motorists. If that provision is included in the policy. If it's not, it doesn't. Well, let me ask you just another way. And I asked opposing counsel a couple of times, and I'm still not sure I understood the response. But when I looked at, normally when you get insurance, you have, you pay a premium for a certain total limit of coverage. And in looking at their policy, and I seem to understand opposing counsel as saying this was a million-dollar policy and that was what the premium was for. And so it's paid out either through liability or it's paid out through uninsured motorist coverage. And your theory is that this should be a $2 million policy. So my question is, did the Ashland Christian Fellowship, did they pay for a million-dollar policy or a $2 million policy? They paid for a million dollars in liability coverage and a million dollars in underinsured. A million. Yes. Your view is that the premium, what they bargained for, the premium they paid was for a total of $2 million coverage. Is that what you're telling me? Yes. And that's what the declaration page says, 242 in the excerpt of record. Liability is a million dollars with a premium stated. Uninsured motorist is a million dollars with a separate premium stated. And then they have some language which is ambiguous to me, but they had some language which seemed to indicate that once they paid out the million, you don't get anything else, which would say to me that's a million-dollar policy as opposed to a $2 million policy. But I'll check with opposing counsel. But that provision is unenforceable, Your Honor, because it doesn't fit in the scheme of 504.1 through 12. That's what Vega says. And in short, we read ORS 504.1 through 12 as setting out a comprehensive model, UM-UIM policy that may be varied only in the sense that terms that disfavor insureds may be excluded, which is what they did here when they left out that an uninsured vehicle is not an insured vehicle, or softened, and extraneous terms that are neutral or that favor the insured may be added. You cannot add extraneous terms, which is what the district court found they did, which disfavor insureds. Is the policy provision in question, D2B, is that more favorable to the guide one than had they included the definition of underinsurance as permitted? No. The result is the same. I understand the result is the same in this case, but hypothetically in a different case, might the result be different? Or is it always going to be the same? Well, I haven't really thought about that, Your Honor, and the truth is that it doesn't matter because that isn't the way you analyze things in Oregon. You analyze things, did they put in permissible policy exclusions that prevent coverage, or did they leave them out? And if they left them out, then there's coverage. That's what Vegas says, that's what Erickson says. And in this situation, that's what the district court found happened here. I want to go back to the policy and point out again that the policy defines underinsured motor vehicle to include the vehicle in this case. A vehicle where that's an underinsured motorist vehicle where the limits for bodily injury liability is reduced by payments to others injured in the accident to an amount which is less than the limit of liability for this coverage. They absolutely mirror Takano in their definition, and therefore Perkins, even if it applied as the law of Oregon, wiping out Takano, which I don't think it does because it's clearly only dealing with a single claimant situation. Takano was, they were hit by an uninsured motorist, right? That wasn't a single? Yes, Your Honor. So they weren't trying to double the coverage. I mean, that's a concern I have. In that case, they were just saying they were getting, they were tapping their own limit of liability for their endorsement. But here what I'm hearing is that because it doesn't mirror the language of the Oregon statute, that they should have double the coverage that they paid for and bargained  That's what I'm confused about. Well, Your Honor, in Vega, in Vega, there's a permissible provision number 12 in 504 that provides a two-year statute of limitations. That policy didn't have it. Vega said it's a six-year regular contract statute of limitations, even though they could have totally wiped out any claim by the Vegas. Let me understand. This is a hard case, and it's a hard case for me partly because we don't get insurance cases all the time, and I've never seen one quite like this. But my understanding is Well, in this Oregon scheme, Your Honor, as far as I understand, is unique. But my understanding of your argument runs as follows, that all of the passengers in the vehicle are insured under the policy. Clearly true. And they are entitled to recover under the liability of the policy, which is a million dollars. Not because they're insured. It's because they're claimants. No, no. Because they're claimants. But they're also entitled to recover under your theory under the uninsured or underinsured part because the million dollars simply is not enough to satisfy their claims. Not because of that, Your Honor. I mean, they are yes. I mean, they're entitled to get compensated up to the value of their claims by underinsured motorist coverage. But they're entitled to underinsured motorist coverage because the law of Oregon, as interpreted by Takano, and absolutely the policy gives them the right to make that claim. Yes, I understand that. Right. And this is a contract case where if you get a contract that allows you to make a claim, you get to make a claim, even if policy-wise, Guide 1 is upset. But in fact, the contract doesn't allow that claim. What you're saying is you need to read the contract, compare it to the model policy, but only to those parts of it that should be put in. That's what Oregon says. But from a contract perspective, your clients actually don't get to make the claim. Isn't that right? No. From a contract perspective, you look at the enforceable provisions of the contract and you do get to make the claim. And that's the way Oregon works. Your theory is that the statute tells you that there are certain things in the contract, whether they're there or not, and there are certain things that are not in the contract, whether they're there or not, because of what the statute says. Well, the ‑‑ you can leave things out of the contract that are in the statute and make the policy more favorable, which is what Guide 1 did. You cannot insert into the contract provisions which are less favorable, which are not in the statute. That is the Oregon statutory scheme. And, you know, people might not like it, but that's the law. And this is a contract case. Now, believe me, injured claimants do like it in this situation. Insurance companies don't like it. But like or dislike is not the point. It's what the contract says that's permissible to say under Oregon law. And they define this as an underinsured motorist case. They provide coverage to people, passengers in the vehicle, for underinsured motorist coverage. And the purported exclusion or way of eliminating coverage is unenforceable under Oregon law. I have one second to talk about attorney's fees. And I think it was an abuse of discretion. And I wasn't trying to say that there was ‑‑ this should have been handled as a common fund case. But it's clear that the federal judge that awarded the fees was looking at this from a lodestar approach. And that's not permissible because a lodestar approach doesn't take a contingent fee into account. And the Oregon contract does. When federal law analyzes on a contingent basis, and this is a common fund case, my fee is coming out of a common fund that goes to more than the Smiths by the contract that was entered into. The minimum should be ‑‑ or the standard is 25 percent. It shouldn't be 5 percent. Okay. Thank you. Thank you very much. Mr. Hardy ‑‑ Mr. Brady, I'm sorry. Two minutes. Thank you. In response to Judge Fletcher, the vast majority of accidents will involve another car. So when you pay your premium, there will be many situations in which underinsured motorist coverage will be available. My liability limits may be a million, but then I'm hit by a car with 15,000. And you can imagine all sorts of variations in the liability limits of the tort fees of the negligent driver. So in the vast majority of these cases, you're getting value for your premium. But when the liability limits of the tort fees policy are equal to the liability limits and the UIM limits of the Oregon policy, then there will be no recovery. I would also like to point out that Mr. Black was the attorney for the claimants in the Perkins case. So he argued the case in the Supreme Court, and he argued in that case that his client's injuries were worth $500,000 and therefore he should be able to get all this additional money under the UIM coverage. And the Supreme Court rejected that argument. So they do not accept this argument about uncompensated, that you didn't get full value for your injuries. Thank you very much. Thank both sides. Smith v. Guidewine Mutual Insurance, now submitted for decision. We've got one case listed, which is actually off-calendar. That's Nielsen v. Port of Gold Beach. The last case on the argument calendar this morning, Thomas v. U.S. Bank. Thank both sides.
judges: Fletcher W. , Ikuta, Seabright